UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


MARY LEE JETTON,                )
                                )
            Plaintiff,           )
                                )
       v.                        )     No. 4:06 CV 910 CAS
                                )                       DDN
MICHAEL J. ASTRUE,[1]            )
Commissioner of Social Security, )
                                )
            Defendant.           )
                                )

              **REPORT AND RECOMMENDATION**
              **OF UNITED STATES MAGISTRATE JUDGE**

    This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Mary Lee Jetton for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq., and 1381 et seq. The action was referred to the undersigned United States Magistrate Judge for review and a recommended disposition under 28 U.S.C. § 636(b).


                        **1. Background**
    Plaintiff Mary Lee Jetton applied for disability benefits on July 21, 2003. She alleges she became disabled on June 15, 1998, at the age of 36, due to mental health problems. (Tr. 65, 118.)
    Following an evidentiary hearing held on August 4, 2005, an administrative law judge (ALJ) denied benefits on September 20, 2005. (Tr. 10-21.) Because the Appeals Council, after reviewing new evidence, denied review of the ALJ's decision (Tr. 5-8), it became the final decision of the Commissioner for review in this action.

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted as defendant in this suit. 42 U.S.C. § 405(g).

## 2. General Legal Principles

The court's role on judicial review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). So long as substantial evidence supports that decision, the court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A). A five-step regulatory framework governs the evaluation of disability in general. See 20 C.F.R. §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that a claimant is disabled or not disabled at any step, a decision is made and the next step is not reached. 20 C.F.R. § 404.1520(a)(4).

Here, the Commissioner determined that plaintiff maintained the RFC to perform her past relevant work. Therefore, the burden remains on plaintiff to prove that she cannot perform her past relevant work. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).

## 3. Decision of the ALJ

In a September 20, 2005, decision denying benefits, the ALJ found that plaintiff maintained the residual functional capacity (RFC) to lift

10 pounds frequently and 20 pounds occasionally, and should have no more than occasional contact with co-workers. (Tr. 19.)

The ALJ noted plaintiff's past relevant work was that of a production assembler, label coder, housekeeper, and waitress, but that she had not worked since 1997.[2] She was 44 years old at the time of the hearing. The ALJ noted plaintiff had a somatoform disorder, a depressive disorder, pancreatitis, and anxiety disorder. (Tr. 13-14.)

The ALJ considered plaintiff's testimony, noting that she reported problems with anxiety and depression, crying, and panic attacks.[3] Plaintiff testified that she went to the grocery store with friends, visits friends, babysits for children of her friends two nights per week for four hours, watches television, and attends church once per month. She claimed she had not drunk alcohol for 14 years. She reported not taking illegal drugs since 1998, but not smoking marijuana for four to five years. She lost her Section 8 housing due to an allegation of fraud, but plaintiff denied the fraud occurred. (Tr. 14.)

The ALJ found that plaintiff's subjective complaints were not credible, and that her daily activities were not consistent with a disabling condition. Plaintiff was able to visit with friends, shop, play with children, do household chores, drive, and leave her home for a variety of activities. She did not use strong pain medication, did not seek regular psychiatric treatment, and did not seek treatment for pancreatitis. There was no indication she did not seek treatment due to an inability to afford it.[4] Plaintiff also did not require extensive surgery or prolonged hospitalization, and plaintiff's depression and

---

[2] While the ALJ noted plaintiff had not worked since 1997, she testified at the hearing that she had worked two years prior at Subway making sandwiches. She testified she quit that job because she would have panic attacks while at work. (Tr. 29-30.)

[3] Plaintiff testified that she had at least two panic attacks a day, up to a half-hour in length. She has trouble sleeping, often going a week with no sleep, and she cries daily. (Tr. 33-35.)

[4] Plaintiff testified she does not take medication for her depression and anxiety or see a psychiatrist due to an inability to afford these treatments. She takes samples of antidepressants that last her two weeks, but then will go two months with no medication. (Tr. 35-37.)

-3-

anxiety was controlled by medication.  The ALJ noted that plaintiff's prior convictions for violating the law, her history of substance abuse, and allegations of fraud generally detract from her credibility. Plaintiff also testified she had not used illegal drugs since 1998, but later was hospitalized in 2001 for such use.  (Tr. 17-18.)

The ALJ considered plaintiff's medical history.  He considered her hospital stay in May 2001, treatment notes of Lance Gerowin, M.D., treatment notes from the Bridgeway Counseling Center, treatment notes from consulting physician Robert Harris, Ph.D., and records from her stay at DePaul Health Center.  (Tr. 15-16.)  The ALJ noted that the opinion of Dr. Gerowin was not fully credible, because it was inconsistent with the lack of objective findings in his own treatment record.  (Tr. 15.)

Considering the above, the ALJ found that plaintiff maintained the RFC to perform her past relevant work as a production assembler or label coder.[5]  The ALJ considered vocational expert (VE) testimony about the requirements of plaintiff's past relevant work.[6]  (Tr. 19-20.)

### 4. **Plaintiff's Grounds for Relief**

Plaintiff argues that the decision of the ALJ is flawed because 1) the ALJ failed to properly consider her RFC under the proper standards; 2) the ALJ failed to properly consider her subjective complaints; and

---

[5]The ALJ asked plaintiff at the hearing about her jobs as a labeler.  Plaintiff testified that she stood while doing this job, and would kneel when doing inventory at that job.  She did no lifting, and worked at this job for four months.  (Tr. 44, 47-48.)

Plaintiff also reported her job of labeling required the use of tools, such as a glue gun, and opening and closing boxes.  She would lift 20 pounds at most, and less than 10 pounds frequently.  (Tr. 107.)

[6]The VE testified about the requirements of plaintiff's past work as a label coder, waitress, deli cutter/slicer, kitchen helper, assembler, and inventory clerk.  He found her job as a label coder was light, unskilled work, as was the job of hand packer packager.  The VE testified these jobs required very little public or coworker conduct. He also testified that if plaintiff's testimony were true, she would not be able to perform these jobs due to her inability to isolate herself twice a day when suffering a panic attack.  (Tr. 50-52.)

-4-

3) the ALJ failed to undertake the proper analysis to determine whether plaintiff was capable of performing her past relevant work. (Doc. 16.)

## 5. Discussion

### A. RFC

The RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a). When determining a plaintiff's RFC, the ALJ must consider "all relevant evidence" but ultimately, the determination of the plaintiff's RFC is a medical question. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). As such, the determination of plaintiff's ability to function in the workplace must be based on some medical evidence. Id.; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

Plaintiff argues that the ALJ failed to consider the new and reliable medical evidence of Cengiz Sumer, M.D., which was submitted after the ALJ's decision. On September 21, 2005, plaintiff visited Dr. Sumer for the first time, and complained of restlessness, irritability, muscular tension, sleep disturbance, being homeless, having no income, and sadness. He diagnosed her with generalized anxiety disorder, depression, post-traumatic stress disorder, borderline personality disorder, and a Global Assessment of Functioning Score of 48.[7] (Tr. 619-20.)

On September 30, 2005, Dr. Sumer completed a mental residual functional capacity questionnaire. He opined plaintiff had anxiety and depression, as well as post traumatic stress disorder, borderline personality disorder, and a GAF of 48. He opined her symptoms included appetite disturbance, weight change, decreased energy, feelings of guilt and worthlessness, poverty of content of speech, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic experience, intense and unstable interpersonal relationships, impulse and damaging

---

[7]A GAF score of 48 indicates serious symptoms, including suicide ideation, severe obsessional rituals, or serious impairments in social and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

-5-

behaviors, motor tension, emotional liability, deeply ingrained maladaptive patterns of behavior, distractability, and a history of multiple physical symptoms. (Tr. 613-15.)

Dr. Sumer opined that plaintiff had no useful ability to maintain regular attendance, be punctual, complete a normal workday or week without interruption, perform at a consistent pace, get along with co-workers, respond appropriately to changes in the work place setting, and to deal with normal work stress. Plaintiff was unable to meet the competitive demands of remembering work-like procedures, maintaining attention for two-hour periods, sustaining an ordinary work routine without special supervision, working in coordination with or proximity to others without being unduly distracted, making simple work-related decisions, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, and being aware of normal hazards and taking appropriate cautions. Plaintiff was also unable to understand and remember detailed instructions, set realistic goals or make plans independently of others, deal with stress of semi-skilled and skilled work, maintain socially appropriate behavior, maintain basic standards of neatness and cleanliness, and travel in unfamiliar places. Dr. Sumer noted that plaintiff had gastrointestinal problems as well as mental problems. (Tr. 615-17.)

Plaintiff argues that Dr. Sumer's opinion is consistent with other evidence in the record, and that substantial evidence exists supporting plaintiff's mental impairments.

"Section 405(g) generally precludes consideration on review of evidence outside the record before the Commissioner during the administrative proceedings." Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997). Remand for consideration of new evidence is only appropriate when plaintiff shows that the "new evidence . . . is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Jones, 122 F.3d at 1154 (quoting 42 U.S.C. § 405(g)). For the new evidence to be material, it must be non-cumulative, relevant, and probative of plaintiff's conditions, and there must be a reasonable likelihood that

the ALJ's decision would have been different had he considered this evidence. Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Jones, 122 F.3d at 1154.

Plaintiff has not shown good cause for the failure of this evidence to be incorporated into the record prior to the ALJ's decision.  Here, plaintiff waited until after an unfavorable decision to obtain a consultive examination by Dr. Sumer.  Plaintiff did not request that the record be kept open for the admittance of such evidence.  This failure does not show sufficient "good cause" for the failure of the evidence to be entered into the record prior to the ALJ's decision.

Plaintiff has also not shown that Dr. Sumer's opinion would have likely changed the ALJ's decision.  Dr. Sumer was not a treating physician whose opinion is afforded great weight.  Stormo v. Barnhart, 377 F.3d 801, 805 (8th Cir. 2004) (treating physician's opinion is entitled to controlling weight).  Dr. Sumer does not fully explain his opinions, and merely filled out a "check list" of symptoms he thought plaintiff suffered from after one visit with her.  Further, Dr. Sumer's opinions are inconsistent with the record as a whole.  No other doctor found plaintiff to be so limited, and plaintiff had even reported earlier being content with her social life, babysitting, caring for herself, and spending time with friends and family.

Plaintiff also argues that the ALJ did not fully develop the record.  "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). "Although that duty may include re-contacting a treating physician for clarification of an opinion, that duty arises only if a crucial issue is undeveloped." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).  The ALJ need not seek additional medical evidence if the existing evidence provides a sufficient basis for a decision.  Stormo, 377 F.3d at 806.

Here, plaintiff only argues that "[n]one of the treating physicians in this matter were asked to express an opinion relative to Plaintiff's ability to engage in the physical aspects of work activity[,]" and that no doctor except Dr. Sumer opined about plaintiff's mental RFC.  (Doc.

16 at 14.) There is nothing in the record that suggests any doctor found plaintiff's gastrointestinal problems to be limiting. Further, plaintiff does not argue that any treating physician's opinions were undeveloped or ambiguous. The ALJ has no duty to re-contact a treating physician when the ALJ can determine from the record that the plaintiff is disabled. Hacker v. Barnhart, 459 F.3d 934, 938 (8th Cir. 2006).

There is substantial medical evidence in the record supporting the ALJ's decision. No doctor, besides Dr. Sumer, opined plaintiff suffered from a mental impairment that limited her activities in any substantial way. On September 13, 2002, plaintiff was seen for a psychological evaluation by Line Brynjulfsen, M.A., a graduate student who was supervised by Robert N. Harris, Ph.D. She was diagnosed with undifferentiated somatoform disorder, depressive disorder, anxiety disorder, alcohol abuse and dependance in remission, dependant and histrionic personality features with a GAF of 58.[8] Her ability for self-care, to understand and follow oral and written directions, to concentrate, and to remember showed no impairments. Plaintiff reported living with her boyfriend of 18 years and getting along well with others and being happy with her social network. She said she had a "pretty good" ability to get along with others. It was noted her history was not consistent with that of a person with bipolar disorder. She was not currently taking anti-depressants. (Tr. 403-05.)

R. Rocco Cottone, a consulting physician, did not opine that plaintiff was any more than moderately limited in any area. He noted that a letter she had written was well-written, organized and coherent. He found her only partially credible. He noted that she could understand, remember, and carry out simple tasks, make simple work-related judgments, relate adequately to co-workers and supervisors, and adjust to changes in the workplace. The only limitations Dr. Cottone imposed on plaintiff were that she avoid work involving intense interpersonal interaction or proximate to controlled substances. (Tr. 153-63, 168-70.) Plaintiff has not had an illegal drug or alcohol problem since at least 2001.

---

[8]A GAF score of 58 indicates moderate symptoms. DSM-IV, supra note 7, at 34.

The ALJ did not err by determining that there was not substantial medical evidence supporting limiting her RFC further.

**B. Subjective Complaints**

Plaintiff argues that the ALJ's determination of her credibility was not in accord with the factors stated in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

"The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ." Polaski, 739 F.2d at 1322. Factors to be considered include the claimant's daily activities, the duration, frequency, and intensity of the pain, any precipitating factors, whether the claimant has been taking pain medication and the dosage, and functional restrictions. Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003); Polaski, 739 F.2d at 1322. The ALJ may not discredit subjective complaints based solely on personal observation. Polaski, 739 F.2d at 1322. "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "An ALJ who rejects such complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Id.

The ALJ considered plaintiff's subjective complaints, and there is substantial evidence supporting his decision to find them not credible. Plaintiff did not visit a doctor for any psychiatric treatment after 2002 until visiting Dr. Sumer in 2005. Infrequent doctor visits can indicate that the plaintiff's complaints are not credible. See Buckler v. Bowen, 860 F.2d 308, 311 (8th Cir. 1988); Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987). Plaintiff also did not consistently take any anti-depressant medication, but did continue to take Valium even though she had a history of Valium dependancy. Non-use of prescription medications is not indicative of a disabling condition. Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996). While plaintiff claims she did not visit a psychiatrist or take anti-depressants due to financial hardship, "failure to pursue more aggressive treatment cannot be wholly

-9-

excused due to [her] claims of financial hardship." Tate v. Apfel, 167 F.3d 1191, 1197 (8th Cir. 1999).

Plaintiff also reported having a healthy social life with which she was content; she went to church, did housework, and was able to care for herself. She reported driving and babysitting two children twice a week for four hours at a time. These activities are inconsistent with plaintiff's reports that she is unable to work with people or function daily without having a panic attack for up to a half hour. Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007) (taking care of an 11-year old, driving, doing housework, and shopping are not consistent behaviors of a person suffering from a disability).

Several other factors support the ALJ's decision. Plaintiff did not have a significant work history. See Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002). The ALJ also considered plaintiff's criminal history, including charges of forgery and contempt of court, and an allegation of fraud which caused her removal from Section 8 housing. These past incidents can raise a question about her general credibility. Plaintiff argues that the ALJ should not have relied upon past charges of which she was not ultimately convicted, but these crimes were not the only factors relied on by the ALJ.

The ALJ properly considered plaintiff's subjective complaints.

## C. Past Relevant Work

Plaintiff argues that the ALJ did not undertake the proper analysis when determining that she could perform her past relevant work. Plaintiff argues that the hypothetical question posed to the VE was flawed in that it did not contain all of the nonexertional limitations contained in Dr. Sumer's report.

As stated above, the court need not consider the report of Dr. Sumer. The hypothetical posed to the VE was sufficient. "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." Grissom v. Barnhart, 416 F.3d 834, 837 (8th Cir. 2005) (quoting Tucker v. Barnhart, 363 F.3d 781, 784 (8th Cir. 2004). "The hypothetical question must include all the claimant's impairments supported by substantial evidence

-10-

in the record as a whole." Grissom, 416 F.3d at 837. However, it does not need to include those impairments that the ALJ does not find credible. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005); Grissom, 416 F.3d at 837 (mental conditions, if supported by the record, must be considered by VE).

The ALJ asked the VE to consider an individual who could lift 20 pounds occasionally and 10 pounds frequently, and could sit, stand, or walk for six hours in an eight-hour workday. Such a person should only have occasional or less contact with the public or co-workers. (Tr. 51.) This hypothetical contains all of the limitations in plaintiff's RFC.

"The ALJ evaluates a claimant's ability to do past relevant work based on a review of the claimant's residual functional capacity and the physical and mental demands of his past work." Evans v. Shalala, 21 F.3d 832, 833 (8th Cir. 1994). "The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's residual functional capacity." Pfitzner v. Apfel, 169 F.3d 566, 568 (8th Cir. 1999) (quoting Groeper v. Sullivan, 932 F.2d 1234, 1238-39 (8th Cir. 1991)). Further, the ALJ must then "make explicit findings regarding the actual physical and mental demands of the claimant's past work." Pfitzner, 169 F.3d at 569.

Here, the ALJ properly determined plaintiff's RFC and her mental and physical abilities to do work. Her RFC is supported by substantial evidence. The ALJ also set forth the physical and mental demands of plaintiff's past relevant work as a labeler and assembler. The VE testified that work as a labeler and assembler, according to the Dictionary of Occupational Titles, was light and unskilled, and that such a person with plaintiff's RFC could perform it. Plaintiff's own testimony and reports of her past work as she actually performed it are consistent with the VE's testimony. Plaintiff did not meet her burden of proving she can no longer do her past relevant work.

**RECOMMENDATION**

For the reasons set forth above, it is the recommendation of the undersigned that the decision of the Commissioner of Social Security be affirmed under Sentence 4 of 42 U.S.C. § 405(g).

The parties are advised that they have ten days to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

      /S/ David D. Noce    
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 7, 2007.